FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2011 NOV -1 A 8: 39

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| NATIONAL STUDENT CLEARINGHOUSE, a Virginia non-profit corporation, | |
| *Plaintiff,* | Civ. No.: 1:11cv1188 |
| v. | GBL-IDD |
| AVOW SYSTEMS, INC., a Colorado corporation, | |
| *Defendant.* | |

## COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT, INVALIDITY, AND UNENFORCEABILITY

Plaintiff National Student Clearinghouse ("NSC") for its Complaint against Defendant Avow Systems, Inc. ("Avow") avers the following through its undersigned counsel:

### NATURE OF THE CASE

1. This is an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, seeking an Order confirming that NSC does not infringe any claim of U.S. Patent No. 8,051,289 (the "'289 Patent"). NSC also seeks an Order declaring that the '289 Patent is invalid and unenforceable.

### THE PARTIES

2. NSC is a Virginia non-profit corporation having its principal place of business within the Alexandria Division of this Judicial District at 2300 Dulles Station Boulevard, Suite 300, Herndon, VA 20171.

3. NSC has been conducting business in Herndon, Virginia for 18 years and employs about 170 people.

4. Upon information and belief, Avow is a for-profit Colorado corporation having its principal place of business at 8055 East Tufts Avenue, Suite 250, Denver, CO 80237.

5. NSC and Avow are each in the business of certifying electronic academic transcripts. NSC's certified electronic transcript system and service operates under the "Transcript Ordering" trade name.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202. As detailed below, Avow's actions have created an actual controversy within the meaning of 28 U.S.C. § 2201 as to the validity, alleged infringement, and enforceability of the '289 Patent. The controversy is substantial, between parties having adverse legal interests, and of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

7. This Court has personal jurisdiction over Avow because, upon information and belief, Avow regularly does and solicits business within this Judicial District.

8. Avow solicited business from NSC within this Judicial District.

9. Avow directed the acts giving rise to the actual controversy between the parties existing in this action to NSC's principal place of business within this Judicial District.

10. NSC's Transcript Ordering system was developed within, and is marketed and operated from, this Judicial District.

11. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391 and 1400.

2

## AVOW'S PROSECUTION OF THE '289 PATENT

12. Application No. 12/904,289 (the "'289 Application"), which issued as the '289 Patent on November 1, 2011, was filed in the U.S. Patent and Trademark Office ("USPTO") on October 14, 2010, and was signed by Jason H. Vick of Sheridan Ross P.C. (Registration No. 45,285) ("Vick").

13. The USPTO published the '289 Application on January 27, 2011 as Pub. No. US 2011/0022496 A1.

14. The face of the '289 Patent identifies Provisional Application No. 60/911,290 (the "'290 Provisional Application") filed on April 12, 2007 under a section titled "Related U.S. Application Data".

15. On October 14, 2010, Vick also filed a Petition to Make Special Under Accelerated Examination Program in connection with the '289 Application. Section 708.02 of the Manual of Patent Examining Procedure ("MPEP"), published by the U.S. Patent & Trademark Office, states, "The objective of the accelerated examination program is to complete the examination of an application within twelve months from the filing date of the application."

16. As a requirement for participation in the Accelerated Examination Program, Section 708.02 of the MPEP requires applicants to submit "a statement(s) that a pre-examination search was made, listing the field of search by class and subclass, publication, Chemical Abstracts, foreign patents, etc."; "one copy of each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record"; and "a detailed discussion of the references, which discussion points out, with the particularity required by 37 CFR 1.111 (b) and (c), how the claimed subject matter is patentable over the references."

17. In support of the Petition to Make Special Under Accelerated Examination Program filed in connection with the '289 Application, Vick filed an Examination Support Document, a Pre-Examination Search Document, and an Information Disclosure Statement ("IDS") on October 14, 2010.

18. The IDS listed 60 references on 3 pages.

19. The Examination Support Document states that the following references are "deemed most closely related to the subject matter of the claims": U.S. Patent No. 5,748,738; U.S. Application Pub. 2008/0208873; U.S. Application Pub. 2006/0282661; and U.S. Patent No. 7,665,141.

20. On April 12, 2011, the USPTO mailed a decision on the Petition to Make Special Under Accelerated Examination Program. The USPTO dismissed the Petition because it "fails to meet the required conditions to be accorded special status under the accelerated examination procedure."

21. On May 11, 2011, Vick signed and filed a Request for Reconsideration of Decision on Petition for Accelerated Examination Procedure Under 37 CFR § 1.102(d) and a Supplemental Accelerated Examination Support Document.

22. The Supplemental Examination Support Document identified the same four references as "most closely related to the subject matter of the claims" as did the Examination Support Document filed on October 14, 2010.

23. On May 13, 2011, the USPTO granted the Petition to Make Special Under Accelerated Examination Program.

24. On June 24, 2011, the USPTO mailed an Office Action in connection with the '289 Application. The Office Action rejected all of the pending claims for obviousness-type double patenting.

25. On July 14, 2011, Vick signed and filed a response to the Office Action. The response included a Terminal Disclaimer signed by Vick.

26. The USPTO approved the Terminal Disclaimer on August 22, 2011.

27. The USPTO mailed a Notice of Allowance and Fees Due in connection with the '289 Application on September 20, 2011. The Notice of Allowance indicated that all of the pending claims in the '289 Application "are allowed." The Notice of Allowance stated that the due date for the issue and publication fee was December 20, 2011.

28. On September 22, 2011, Vick signed and filed a Fee Transmittal and paid the issue and publication fees in connection with the '289 Application. Vick paid the fees two days after the USPTO mailed the Notice of Allowance even though the due date was December 20, 2011.

29. The '289 Application issued as the '289 Patent on November 1, 2011.

### FACTUAL BACKGROUND REGARDING THE SUBSTANTIAL CONTROVERSY BETWEEN THE PARTIES

30. In 2008 and early 2009, NSC had conversations with multiple organizations in search of a cost effective solution to provide digitally signed electronic transcripts with rights management. Avow approached NSC about the potential for collaboration.

31. NSC and Avow executed a Mutual Nondisclosure Agreement ("NDA") on February 25, 2009.

32. From about March 2009 to about Fall 2009, representatives of NSC and Avow met and corresponded regarding a potential business arrangement whereby Avow would digitally sign electronic academic transcripts for NSC.

33. Avow and NSC shared certain publicly known information with each other during their meetings and discussions but did not share proprietary information.

34. NSC and Avow did not agree on a business arrangement whereby Avow would digitally sign electronic academic transcripts for NSC.

35. In late 2009, rather than contracting with Avow, NSC decided to purchase a license to the commercially available LiveCycle® software from Adobe® directly, along with a commercially available digital certificate from GlobalSign, Inc. ("GlobalSign®") used to provide digitally signed electronic academic transcripts with rights management services.

36. In February 2010, NSC announced enhancements to its "Transcript Ordering" service, which included digitally signed electronic transcripts with rights management services.

37. On February 10, 2010, Avow wrote a letter to NSC notifying NSC of its patent application. The February 10, 2010 letter accused NSC of "infringement" of the claims of a pending application (Application No. 12/602,617) ("'617 Application") (of which the '289 Application was a continuation). The letter further stated that "Avow also will seek all recoverable damages, including a reasonable royalty and/or lost profits, plus treble damages for NSC's willful infringement."

38. The February 10, 2010 letter from Avow to NSC also accused NSC of breaching the NDA and misappropriating Avow's trade secrets.

6

39. NSC denied all of Avow's allegations in NSC's letters to Avow dated February 17, 2010 and April 8, 2010.

40. In a letter dated April 14, 2010, Avow once again threatened NSC with a patent infringement lawsuit, specifically stating, in relevant part:

> Our analysis of what we know about the NSC product shows that the NSC product reads on claims 6, 7, 8, 10, 11 and 17 [of the '617 Application]. Avow is confident that its patent will issue. Avow will enforce its patent rights to the fullest extent available, which we believe is a serious threat to NSC's new product line.
>
> ...
>
> Avow is confident that NSC will be infringing Avow's patent once it is issued. Avow is working with patent prosecution counsel on expediting its patent application. Once it is issued Avow will take all actions to protect the patent, including enjoining NSC's infringement.

41. On April 22, 2010, during a conference of the American Association of Collegiate Registrars and Admissions Officers ("AACRAO"), representatives of Avow video recorded an NSC presentation on NSC's transcript services. This video recording was an attempt by Avow to disrupt NSC's presentation and to embarrass NSC in front of its intended transcript service customers. This video recording by Avow was also contrary to the protocols established by the AACRAO conference leaders.

42. Avow followed through on its threat to "expedit[e] its patent application" by filing a Petition to Make Special Under Accelerated Examination Program, as described above.

43. The Patent Office mailed a Notice of Allowance of all claims in the '289 Application on September 20, 2011. Avow did not wait until its three-month due date in order to pay the Issue Fee. Rather, Avow paid the Issue Fee two days later on September 22, 2011. The '289 Application issued as the '289 Patent on November 1, 2011. The '289 Application is the only patent application that Avow has requested accelerated examination before the USPTO. NSC filed this Complaint for Declaratory Judgment on the same day that the '289 Patent issued.

44. Avow's explicit and repeated threats to enforce its patent rights against NSC's "Transcript Ordering" service, Avow's harassment during the April 22, 2010 AACRAO conference, and Avow's actions expediting prosecution of the '289 Application in the USPTO, together with the fact that the '289 Patent has now issued, create an actual and substantial controversy between NSC and Avow having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## COUNT I
### (Declaratory Judgment of Non-Infringement)

45. NSC restates and incorporates by reference Paragraphs 1-44 of this Complaint.

46. NSC does not directly or indirectly infringe any claim of the '289 Patent, either literally or under the doctrine of equivalents, as its enhancements to its "Transcript Ordering" service operate in a fundamentally different manner than the system described and claimed in the '289 Patent.

47. NSC has not induced others to infringe the '289 Patent under 35 U.S.C. § 271(b).

48. NSC has not contributed to others' infringement of the '289 Patent under 35 U.S.C. § 271(c).

49. NSC seeks a judicial determination and declaration of the respective rights and duties of the parties based on Avow's allegations and NSC's contentions. Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the non-infringement of the '289 Patent.

## COUNT II
### (Declaratory Judgment of Invalidity)

50. NSC restates and incorporates by reference Paragraphs 1-49 of this Complaint.

51. All of the claims of the '289 Patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, 35 U.S.C. §§ 102, 103, and/or 112, and the rules and regulations and laws pertaining thereto.

52. NSC seeks a judicial determination and declaration of the respective rights and duties of the parties based on Avow's allegations and NSC's contentions. Such a determination

and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the invalidity of the '289 Patent.

## COUNT III
### (Declaratory Judgment of Unenforceability)

53. NSC restates and incorporates by reference Paragraphs 1-52 of this Complaint.

54. Upon information and belief, the '289 Patent is unenforceable due to inequitable conduct committed before the USPTO during prosecution of the '289 Application, which eventually issued as the '289 Patent.

55. 37 CFR 1.56 ("Rule 56") states:

> Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.

56. Rule 56 further states that "[i]ndividuals associated with the filing or prosecution of a patent application" include "[e]very other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor [or] with the assignee."

57. The inventors named on the face of the '289 Patent are Jay A. Johnson ("Johnson"), Mark R. Johnston ("Johnston"), Ronald M. Hyman ("Hyman"), and Chris M. Kaschmitter ("Kaschmitter"). Each of Johnson, Johnston, Hyman, and Kaschmitter had a duty of candor and good faith in dealing with the USPTO throughout the prosecution of the '289 Application, which included a duty to disclose to the USPTO all information known by him to be material to patentability of the claimed invention.

58. Jason H. Vick of Sheridan Ross P.C. (Registration No. 45,285) ("Vick") had a duty of candor and good faith in dealing with the USPTO during prosecution of the '289 Application, which included a duty to disclose to the USPTO all information known by him to be material to patentability of the claimed invention.

59. By virtue of voluntarily participating in the Accelerated Examination Program, Johnson, Johnston, Hyman, Kaschmitter, and Vick each had a further obligation to, among other things, submit "a statement(s) that a pre-examination search was made, listing the field of search by class and subclass, publication, Chemical Abstracts, foreign patents, etc."; "one copy each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record"; and "a detailed discussion of the references, which discussion points out, with the particularity required by 37 CFR 1.111 (b) and (c), how the claimed subject matter is patentable over the references."

## The February 6, 2006 ADDS Product Launch

60. Johnson and Johnston are listed as managers of Tier1 Innovation, LLC ("Tier1") in Articles of Organization filed with the Colorado Secretary of State on May 30, 2000.

61. In 2006, Tier1 maintained a web site at http://www.tier1innovation.com.

62. On February 6, 2006, Tier1 posted on its web site, a statement that it "announced today the launch of its Authentic Document Delivery Services (ADDS)™ for higher education."

63. No later than March 22, 2006, but upon information and belief, on or about February 6, 2006, Tier1 posted on its web site a description of its ADDS system, which disclosed the ability to "accept requests for documents from students, alumni, faculty and other authorized requestors of official documents"; "to create simple PDFs that present a visual representation of

11

the document as well as the next generation PDF that includes functionality, business rules and embedded data, (i.e. XML)"; "to apply a digital signature"; and "add policy or document rights" to electronic documents. The same web page also disclosed that ADDS "provides a secure, scaleable [*sic*] delivery model." "For more information," the web page instructed readers to contact Hyman.

64. The ADDS system features described by Avow in its February 6, 2006 web site posts disclosed the limitations of the claims of the '289 Patent.

65. Upon information and belief, each of Johnson, Johnston, Hyman, Kaschmitter, and Vick had actual knowledge of the Tier1 web site, including the February 6, 2006 posts about ADDS, during prosecution of the '289 Application.

66. On information and belief, on or about February 6, 2006, Tier1 was offering for sale the ADDS system described on the Tier1 web site.

67. The February 6, 2006 posts about ADDS on the Tier1 web site were a "printed publication" within the meaning of 35 U.S.C. § 102(b).

68. The February 6, 2006 posts about ADDS on the Tier1 web site were material to the patentability of the claims of the '289 Application during its prosecution because they disclosed the limitations of the claims of the '289 Application more closely than any other reference identified by Avow in its Examination Support Document and its Supplemental Examination Support Document.

69. Upon information and belief, each of Johnson, Johnston, Hyman, Kaschmitter, and Vick had an obligation to disclose the February 6, 2006 posts about ADDS on the Tier1 web site to the USPTO in connection with the '289 Application under Rule 56.

70. The February 6, 2006 posts about ADDS on the Tier1 web site were not disclosed to the USPTO in Avow's Examination Support Document or its Supplemental Examination Support Document during prosecution of the '289 Application.

71. Upon information and belief, each of Johnson, Johnston, Hyman, Kaschmitter, and Vick had an obligation to disclose the February 6, 2006 posts about ADDS on the Tier1 web site to the USPTO as a "most closely related" reference in connection with the '289 Application by virtue of voluntarily participating in the Accelerated Examination Program.

72. Upon information and belief, each of Johnson, Johnston, Hyman, Kaschmitter, and Vick had an obligation to submit a detailed discussion of the ADDS system described on the Tier1 web site as of February 6, 2006, pointing out, with the particularity required by 37 CFR 1.111(b) and (c), how the claimed subject matter is patentable over that information by virtue of voluntarily participating in the Accelerated Examination Program.

73. Neither the Examination Support Document filed in the USPTO on October 14, 2010, nor the Supplemental Examination Support Document filed in the USPTO on May 11, 2011, identified the February 6, 2006 posts about ADDS on the Tier1 web site as a "most closely related reference" or otherwise disclosed or cited them.

74. If the Examiner had known about the February 6, 2006 posts about ADDS on the Tier1 web site, the claims of the '289 Application would not have been allowed.

### The February 20, 2006 ADDS Marketing Presentation

75. The '290 Provisional Application to which the '289 Patent claims priority includes an 18-slide presentation entitled "Authentic Document Delivery Service (ADDS)" dated February 20, 2006 (the "February 20, 2006 ADDS Presentation").

76. Upon information and belief, each of Johnson, Johnston, Hyman, Kaschmitter, and Vick had actual knowledge of the February 20, 2006 ADDS Presentation during prosecution of the '289 Application.

77. The February 20, 2006 ADDS Presentation is a "printed publication" within the meaning of 35 U.S.C. § 102(b).

78. The February 20, 2006 ADDS Presentation includes a discussion about pricing considerations and potential near-term customers.

79. On information and belief, as of February 20, 2006, Tier1 was offering for sale its ADDS system described in the February 20, 2006 ADDS Presentation.

80. The February 20, 2006 ADDS Presentation was material to the patentability of the claims of the '289 Application during its prosecution because that Presentation disclosed the limitations of the claims of the '289 Application. The February 20, 2006 ADDS Presentation was also more closely related to the claimed subject matter than any other reference identified by Avow as part of its Examination Support Document and its Supplemental Examination Support Document.

81. Upon information and belief, each of Johnson, Johnston, Hyman, Kaschmitter, and Vick had an obligation under Rule 56 to identify the February 20, 2006 ADDS Presentation to the USPTO in connection with prosecution of the '289 Application.

82. The February 20, 2006 ADDS Presentation was not identified to the USPTO, either in Avow's Examination Support Document or its Supplemental Examination Support Document, during prosecution of the '289 Application.

83. The February 20, 2006 ADDS Presentation was not identified as prior art to the '289 Application, nor was it distinguished from the claims of the '289 Application.

84. Upon information and belief, each of Johnson, Johnston, Hyman, Kaschmitter, and Vick had an obligation to disclose the February 20, 2006 ADDS Presentation to the USPTO as a "most closely related" reference in connection with the '289 Application by virtue of voluntarily participating in the Accelerated Examination Program.

85. Upon information and belief, each of Johnson, Johnston, Hyman, Kaschmitter, and Vick had an obligation to submit a detailed discussion of the February 20, 2006 ADDS Presentation pointing out, with the particularity required by 37 CFR 1.111(b) and (c), how the claimed subject matter is patentable over that information by virtue of voluntarily participating in the Accelerated Examination Program.

86. Neither the Examination Support Document filed in the USPTO on October 14, 2010, nor the Supplemental Examination Support Document filed in the USPTO on May 11, 2011, identified the February 20, 2006 ADDS Presentation as a "most closely related reference" or otherwise disclosed or cited it as prior art.

87. If the Examiner had known about the February 20, 2006 ADDS Presentation, the claims of the '289 Application would not have been allowed.

### Avow's Specific Intent to Deceive the USPTO

88. Upon information and belief, the ADDS system described in the February 6, 2006 posts on the Tier1 web site is substantially the same as the ADDS system described in the February 20, 2006 ADDS Presentation contained in the '290 Provisional Application.

89. Upon information and belief, the ADDS system described in the February 6, 2006 posts on the Tier1 web site and the February 20, 2006 ADDS Presentation are substantially the same ADDS system as that described and claimed by the '289 Patent.

90. In a press release dated April 25, 2006, Tier1 Innovation Holdings, Inc., a company related to Tier1, announced the launch of a new company, Avow Systems, Inc., and stated that Avow Systems Inc. would "operate as a separate company focusing on its premier product offering, Authentic Document Delivery Services (+ADDS™)."

91. Upon information and belief, Johnson, Johnston, Hyman, Kaschmitter, and Vick knew that the February 6, 2006 posts about ADDS on the Tier1 web site and the February 20, 2006 ADDS Presentation disclosed substantially the same subject matter as that described and claimed in the '289 Application.

92. Upon information and belief, Johnson, Johnston, Hyman, Kaschmitter, and Vick knowingly and deliberately withheld the February 6, 2006 posts on the Tier1 web site and the February 20, 2006 ADDS Presentation from the USPTO during prosecution of the '289 Application with the specific intent to deceive the USPTO and for the purpose of fraudulently obtaining the '289 Patent.

93. Johnson, Johnston, Hyman, Kaschmitter, and Vick had two separate opportunities to disclose the February 6, 2006 posts on the Tier1 web site and the February 20, 2006 ADDS Presentation to the USPTO following the dismissal of the first Petition to Make Special and Avow's filing of a Supplemental Examination Support Document.

94. Even after the USPTO explained in detail Avow's obligations under the Accelerated Examination Program, Johnson, Johnston, Hyman, Kaschmitter, and Vick still

withheld the information regarding the February 6, 2006 posts on the Tier1 web site and the February 20, 2006 ADDS Presentation from the USPTO.

95. NSC seeks a judicial determination and declaration of the respective rights and duties of the parties based on Avow's allegations and NSC's contentions. Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the unenforceability of the '289 Patent.

## PRAYER FOR RELIEF

WHEREFORE, NSC prays for the following:

    A.    An order adjudging that NSC does not directly or indirectly infringe, either literally or under the doctrine of equivalents, any claim of the '289 Patent;

    B.    An order adjudging that NSC has not induced others to infringe any claim of the '289 Patent;

    C.    An order adjudging that NSC does not contribute to others' infringement of any claim of the '289 Patent;

    D.    An order adjudging that all of the claims of the '289 Patent are invalid;

    E.    An order adjudging that the '289 Patent is unenforceable due to inequitable conduct;

    F.    An order enjoining Avow, and its agents, employees, representatives, counsel, and all persons in active concert or participation with any of them, directly or indirectly, from threatening or charging infringement of,

or instituting any action for infringement of the '289 Patent against NSC, its suppliers, and its customers;

G. An order adjudging that this case is an exceptional case within the meaning of 35 U.S.C. § 285, entitling NSC to an award of its reasonable attorneys' fees, along with any other and further relief as the Court deems just and proper;

H. An order that NSC be awarded its costs as the prevailing party; and

I. Such other and further relief, at law or in equity, to which NSC is justly entitled.

Dated: November 1, 2011

Respectfully submitted,

**DICKSTEIN SHAPIRO LLP**

By: _____
Charles D. Ossola, Esq. (VA Bar # 18102)
1825 Eye Street NW
Washington, DC 20006
Telephone: (202) 420-3305
Facsimile: (202) 420-2201

*Counsel for Plaintiff*
*National Student Clearinghouse*